**Henry C. Mills et al., Appellees, v. School Directors of Consolidated District No. 532, Appellants.**

**Gen. No. 5192.**

SCHOOLS—*power of directors to make contracts to haul children to school.* School directors have no power to hire wagons and make contracts for the hauling of children to school.

Bill for injunction. Appeal from the Circuit Court of Putnam county; the Hon. LESLIE D. PUTERBAUGH, Judge, presiding. Heard in this court at the April term, 1909. Affirmed. Opinion filed March 11, 1910.

GEORGE W. HUNT and WINSLOW EVANS, for appellants.

BARNES & MAGOON, for appellees.

MR. JUSTICE THOMPSON delivered the opinion of the court.

Henry C. Mills and others, who are the owners of real estate and taxpayers in Consolidated School District No. 532 in Putnam county, filed a bill in chancery on the 5th of October, 1907, against the School Directors of Consolidated District No. 532, and Victor Keyes, John Wilson, Willis B. Mills, clerk of the board of directors, and Walter Griffith, personally and as treasurer of said district, and Mary Keyes Oliver, M. Mills and C. B. Moore Lumber Company, a corporation, praying an injunction restraining the defendants from misappropriating funds of said district. The bill alleges that the defendants were conspiring together to squander the public money of the school district and using the public school money for buying wagons, and hiring drivers and teams for hauling children to and from the schoolhouse. The bill was amended at the October term, 1908.

Consolidated District No. 532 is composed of three other districts, formerly known as the Center District, which was the most eastern one, the Clear Creek District, which was the middle one, and the Kays District, which was the western one. These three districts were consolidated into one district and a new schoolhouse built costing $15,000. The Consolidated District is about six miles in length east and west and between two and three miles in width, north and south, so that some of the children resided three and a half miles from the schoolhouse.

The evidence shows that the directors had paid out of the school funds $342 for the purchase of wagons and made a contract with Mary Kays to run a wagon on the west route at $40 per month and during the

school year of 1907 had paid her $240 out of the funds of the district and had paid T. J. Smith $199 for running a wagon over the east route for hauling the children. It is also shown that this money was paid from the building fund and not from the educational fund. The original contracts with Mary Kays and T. J. Smith for hauling the children were verbal. After the filing of the original bill and before the amended bill the contract was reduced to writing. There are a number of matters alleged in the bill concerning the old schoolhouse which are not material to the question presented in this court. The defendants filed an answer to the bill stating that there had been a vote of the district authorizing the purchase of wagons and the hiring of parties to drive the children to and from school and that the compensation paid for such services was reasonable and denying that they were wrongfully expending the money of the district. The court on a hearing on the bill, answer, replication and report of the master found, that the acts of the directors in the expenditure of money for wagons and hiring persons to run the wagons, to haul the children to and from their residences to the schoolhouse, were unlawful and illegal and enjoined the district from paying any school orders issued in payment for wagons, or compensation for running such wagons, and from issuing or paying any school orders for running the wagons or other conveyances to haul children to and from said schoolhouse, out of any funds of said district. The defendants appeal to this court.

No question is presented concerning the right of a court of chancery to enjoin the use or appropriation of the funds of the district for an illegal purpose. The only question presented for our consideration is whether the school directors possess or have an inherent right or authority under the statute to use school funds for hauling children living remote from the school to and from school. There is a charge in the bill and some proof presented tending to show that

favoritism had been shown in hauling some children and in refusing to haul others more remote from the schoolhouse, but in the view we take of the case it is unnecessary to consider that question. Appellants insist that under paragraph 5, of section 26 of Article V of chapter 122 of the Revised Statutes of Illinois, they are given authority to expend money for the purposes in controversy in this case. Said section 26 defines the duties of the board of directors: "It shall be the duty of the directors of each district, * * * to establish and keep in operation * * * a sufficient number of schools for the accommodation of all children in the district * * * and shall secure for all such children the right and opportunity to an equal education in such free schools." Section 26 of Article V contains fifteen paragraphs prescribing the duties of the board of directors, the third of which is "to provide for the necessary revenue to maintain free schools in their district in the manner provided for in Article VIII of this act." Section 1 of Article VIII of the school law concerning revenue provides, "For the purpose of establishing and supporting free schools for not less than six nor more than nine months in each year, and defraying all the expenses of the same of every description, for the purpose of repairing and improving schoolhouses, of procuring furniture, fuel, libraries and apparatus, and for all other necessary incidental expenses in each district, village or city, anything in any special charter to the contrary notwithstanding, the directors of such district and the authorities of such village or city shall be authorized to levy a tax annually upon all the taxable property of the district, village or city not to exceed two and one-half per cent, for educational and two and one-half per cent for building purposes * * *."

The question presented so far as we have been able to find has never been passed upon by the courts of this state. In Vermont, Massachusetts and Kansas, statutes have been enacted providing that school dis-

tricts may use a certain per cent of the school funds raised for educational purposes for the purpose of hauling children to and from school, but there is no such statute in this state. Section 26 of Article V prescribes what shall be the duties of the board of directors. Section 1 of Article VIII provides that for the purpose of establishing and supporting free schools a tax of two and one-half per cent may be levied for educational purposes, and it is settled law that all school expenses except the building of school houses must be paid from the educational fund.

The issuing of orders for wagons and the hauling of children and paying them out of the money in the building fund was a misapplication of the moneys of that fund. People v. T. St. L. & W. R. R. Co., 231 Ill. 514; C. & A. R. R. Co. v. People, 163 Ill. 616; Wabash R. R. Co. v. People, 187 Ill. 289; O'Day v. People, 171 Ill. 293. The policy of the law is to encourage the maintenance and efficiency of school systems; however, the officers of the school district have not unlimited power. The legislature deemed it necessary to pass an act by which text books may be supplied to children whose parents are unable to buy them. If the contention of appellants be correct then that statute was unnecessary. The directors have only powers which are expressly granted them and such implied powers as are necessary to carry into effect the express powers delegated to them. To secure the right and opportunity of equal education does not require that the children should be hauled to school any more than it would require that the directors should clothe them or furnish meals. We are constrained to hold that the acts of the directors in hiring wagons and making contracts for the hauling of children to school were beyond their powers, illegal and void. There was no proof of a vote by the people as alleged in the answer, and the effect of such a vote is not before us. The decree of the Circuit Court is affirmed.

*Affirmed.*